United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 17, 2004**

Charles R. Fulbruge III
Clerk

REVISED MAY 18, 2004

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-70019

_____

KELSEY PATTERSON,

                              Petitioner - Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

                              Respondent - Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

Before JOLLY, JONES, and BENAVIDES, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal presents the question of whether the petitioner is mentally competent to be put to death under the rationale of Ford v. Wainwright, 477 U.S. 399 (1986). Kelsey Patterson was convicted in the Texas courts of capital murder and sentenced to death. In an unpublished opinion in May 2003, this court affirmed the district court's denial of federal habeas relief. We granted a certificate of appealability for Patterson's claim that he was then incompetent to be executed, but dismissed that claim without prejudice in order to allow the state court to consider Patterson's

claim of incompetency to be executed, in the light of the evidence presented at the federal evidentiary hearings in 1999, as well as any evidence of his condition subsequent to that time, after an execution date had been scheduled.

I

On December 23, 2003, the convicting court ordered the issuance of a death warrant, setting Patterson's execution date for May 18, 2004. On January 28, 2004, Patterson's counsel filed a motion in the convicting court to determine Patterson's competency to be executed under Article 46.05 of the Texas Code of Criminal Procedure.[1]  A supplement to that motion was filed on March 16,

---

[1]Article 46.05 provides, in pertinent part:

> (a) A person who is incompetent to be executed may not be executed.
>
> ....
>
> (d)  On receipt of a motion filed under this article, the trial court shall determine whether the defendant has raised a substantial doubt of the defendant's competency to be executed on the basis of:
>
> (1) the motion, any attached documents, and any responsive pleadings; and
>
> (2) if applicable, the presumption of competency under Subsection (e).
>
> (e) If a defendant is determined to have previously filed a motion under this article, and has previously been determined to be competent to be executed, the previous adjudication creates a presumption of competency and the defendant is not entitled to a hearing on the subsequent motion filed

2

2004.  In support of the motion, Patterson's counsel submitted his medical and psychiatric records from the Texas Department of Criminal Justice, affidavits from a psychologist and a spiritual counselor, and recent letters written by Patterson.

Patterson's medical and psychiatric records indicate that, since July 2001, Patterson has been evaluated every 90 days and that he is not taking any psychotropic medications.  As his counsel acknowledged in the motion, Patterson's prison records reflect that he remains docile when left alone.  The spiritual advisor stated in her affidavit that Patterson told her that he had received a stay in 1998 and that in 1999, the Texas Court of Criminal Appeals had acquitted him on an "innocence" claim.  He also told her that his only friend is the State of Texas.  The psychologist stated in his affidavit that, based on his review of Patterson's recent writings,

> under this article, unless the defendant makes a prima facie showing of a substantial change in circumstances sufficient to raise a significant question as to the defendant's competency to be executed at the time of filing the subsequent motion under this article.
>
> (h) A defendant is incompetent to be executed if the defendant does not understand:
>
> (1) that he or she is to be executed and that the execution is imminent; and
>
> (2) the reason he or she is being executed.

At the hearing on Patterson's motion, the convicting court expressly stated that it was not applying the presumption of competency in subsection (e).

3

Patterson continues to have bizarre delusions; that there is no credible evidence that he is malingering his delusions or their effects on his functioning; that it is likely that his chronic delusions impair his rational understanding of his conviction and pending execution; and that his statements raise serious concerns whether he has a factual understanding of his pending execution. Patterson's handwritten letters to various courts and the Texas Board of Pardons and Parole contain references to his "rights in amnesty" and a "permanent" stay of execution "based on innocence." However, they also contain references to the execution date "told to me by Major Miller" and requests to "stop and remove and prevent the execution." For example, in a letter to the Texas Court of Criminal Appeals in February 2004, Patterson states that he needs to "conduct my legal work needed to stop the execution murder assaults injury execution date murder machines grave graveyard murder ...."

The convicting court conducted a hearing on the motion on March 26, 2004. The court noted that it had reviewed the documents submitted by Patterson in support of his motion, and that it was taking judicial notice of the records of prior proceedings in Patterson's case, including the fact that hearings were conducted in December 1997 and January 1998, and that the court had made a factual finding that Patterson's mental illness did not prevent him from realizing that he was going to be executed and the reason for

4

his execution.  At the March 2004 hearing, the court questioned

Patterson:

> THE COURT:   Mr. Patterson, do you
> understand that I've set your execution date
> for May the 18th of 2004?
>
> MR. PATTERSON:   No, I don't for the
> reason of this: I have been told I have been
> stayed from execution based on innocence by
> the Texas Court of Criminal Appeals and
> stayed, stayed, stayed, always stayed from
> execution.
>
> THE COURT:  Okay.
>
> MR. PATTERSON:   By a number of state
> district courts, even acquitted, exonerated,
> not guilty of the charge of capital murder.
>
> THE COURT:  Did you receive a copy of the
> warrant that I signed?
>
> MR. PATTERSON:  No.
>
> THE COURT:   Okay.   Do you know or
> understand that you're convicted of killing
> Dorothy Harris [and] Louis Oates?
>
> MR. PATTERSON:  Do I know?
>
> THE COURT:  Do you know that you've been
> convicted; not whether or not you agree with
> it, but do you know that you've been convicted
> of that offense?
>
> MR. PATTERSON:  I've heard it stated.

Later in the hearing, Patterson was provided a copy of the warrant

setting his execution date.   The following colloquy then took

place:

> THE COURT:   Do you have a copy of the
> warrant?
>
> MR. PATTERSON:  This?

5

THE COURT: Yes, sir. Do you understand that I've set your execution date for May 18th, 2004?

MR. PATTERSON: I get what you're saying. And I said my rights of amnesty.

THE COURT: My rights to amnesty. Is that what you said?

MR. PATTERSON: Yeah.

....

THE COURT: .... Mr. Patterson, do you understand that there's no more stays?

....

MR. PATTERSON: No, I do not.[2]

On March 31, 2004, the convicting court entered an order denying Patterson's motion and his request for appointment of two mental health experts to examine him. The court concluded that Patterson had failed to raise a substantial doubt as to his competency to be executed. Because Article 46.05 does not provide for an appeal from such a decision, Patterson has exhausted his state remedies. See Ex parte Caldwell, 58 S.W.3d 127, 130 (Tex. Cr. App. 2000).

II

---

[2]Patterson asserts that the state court judge did not purport to consider her colloquies with Patterson in determining that he had not made a substantial showing of incompetency. He therefore contends that this court should not consider those colloquies as part of the evidence presented in the state court proceeding. The fact that the court did not explicitly rely on those statements does not mean that they were not in evidence before the court.

6

Patterson filed a petition for federal habeas relief and a motion for stay of execution, raising only the claim that he is incompetent to be executed. The State does not contend that Patterson's petition should be treated as successive under 28 U.S.C. § 2244(b). In a memorandum opinion filed on May 11, 2004, the district court denied habeas relief, concluding that the state court's decision that Patterson had failed to make a substantial showing of incompetency to be executed was not based on an unreasonable determination of the facts in the light of the evidence presented in the state court proceedings. The district court observed that Patterson has consistently expressed the delusions that he killed the victims only because devices implanted in his body by conspirators made him do it, and that he has received a permanent stay of execution based upon his innocence. However, the district court also noted that, in his recent writings, Patterson has made numerous requests that his execution be halted. The district court referred specifically to two of Patterson's pro se petitions, one filed in March 2001, and one filed in March 2004, copies of which are attached to the district court's memorandum opinion. In each of these form petitions, Patterson filled in the blanks that he was requesting relief from the sentence of death, and stated that he received that sentence for having been convicted of capital murder. In his March 2004 petition, Patterson asked the court to "stop and remove and prevent the execution murder death warrants execution date execution hell

7

that is being did to me can I get free from death row....["3"]  The

district court concluded that this evidence shows that Patterson

understands both the fact of his execution and the reason for it

and consequently denied relief.  The district court then granted

Patterson's application for a certificate of appealability.

### III

A habeas petitioner may not obtain relief with respect to any

claim that was adjudicated on the merits in state court proceedings

unless the state court's adjudication of the claim

> (1) resulted in a decision that was
> contrary to, or involved an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of the
> United States; or

> (2) resulted in a decision that was based
> on an unreasonable determination of the facts
> in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  "Section 2254(d)(1) provides the standard of

review for questions of law and mixed questions of law and fact."

Caldwell v. Johnson, 226 F.3d 367, 372 (5th Cir. 2000).  A state

court's decision is "contrary to ... clearly established Federal

law, as determined by the Supreme Court of the United States ... if

the state court arrives at a conclusion opposite to that reached by

th[e] Court on a question of law or if the state court decides a

---

[3]Patterson asserts that the March 2004 pro se petition was filed three days after the state court hearing on his motion and thus was not a part of the record that was before the state convicting court when it rendered its decision.

case differently than th[e] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). A decision "involve[s] an unreasonable application of [] clearly established Federal law, as determined by the Supreme Court of the United States ... if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id</u>. at 413. Section 2254(d)(2) pertains to questions of fact. <u>Moore v. Johnson</u>, 225 F.3d 495, 501 (5th Cir. 2000). A state court's findings of fact are presumed to be correct unless the petitioner rebuts the presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the district court noted, a state court's determination that a prisoner is competent to be executed is a factual finding entitled to the presumption of correctness under Section 2254(e)(1). <u>See</u> <u>Barnard v. Collins</u>, 13 F.3d 871, 874 (5th Cir. 1994). In adjudicating Patterson's motion to determine competency under Article 46.05, however, the state court did not find that Patterson was competent to be executed. Instead, it ruled only that Patterson was not entitled to the appointment of psychiatric experts to examine him and was not entitled to an evidentiary hearing, because he had not raised a substantial doubt as to his competency to be executed. The district court treated the state court's decision as a factual determination, and applied Section 2254(d)(2), citing <u>Delk v. Cockrell</u>, No. 02-40326 (5th Cir. Feb.

9

28, 2002) (treating state court's determination that Delk was competent to be executed, as well as its determination that Delk had failed to make a substantial showing of incompetency under Article 46.05, as factual findings entitled to deference under § 2254(e)(1)), and Caldwell v. Johnson, 226 F.3d 367, 372 n.6 (5th Cir. 2000) ("To the extent Caldwell challenges the state trial judge's holding that he had not made a substantial showing of incompetence, the challenge is without merit -- even if we were not to accord that finding the deference it is due.").

Patterson argues, however, that Section 2254(d)(1) provides the appropriate standard of review. This is so because the state court's determination that he failed to make a substantial showing that he is incompetent to be executed is a mixed question of law and fact. Thus he argues that the state court's decision is both contrary to, and an unreasonable application of, Ford v. Wainwright, 477 U.S. 399 (1986). Alternatively, he contends that, if the state court's decision is a factual determination governed by § 2254(d)(2) and § 2254(e), he has rebutted the presumption of correctness, and that the state court's decision is based on an unreasonable determination of the facts.

The state court's decision is not an unreasonable determination of the facts in the light of the evidence presented to it. That evidence indicates that, although Patterson is mentally ill and expresses the delusional belief that he has been granted amnesty and a permanent stay of execution, his writings

10

also repeatedly request that various courts stop or stay his pending execution. The prison medical and disciplinary records contain nothing to indicate that Patterson's condition has deteriorated since the state court's previous determination that he was competent to be executed. It is true that Dr. Rogers expresses doubt about Patterson's rational and factual understanding that he is to be executed; however, he does not address Patterson's requests that his execution be halted; nor does he explain the inconsistency between those requests seeking relief from execution and his opinion that Patterson may lack understanding that he is going to be executed and the reason why.

IV

Even if we assume that Patterson is correct, and that we are not bound by Delk and Caldwell to accord the state court's decision the deference owed to factual determinations under sections 2254(d)(2) and 2254(e), Patterson nevertheless has not shown that the state court's decision is contrary to, or an unreasonable application of Ford.

As this court observed in Delk, Article 46.05 essentially codifies Ford. Delk, No. 02-40326, at p. 4. Justice Marshall's opinion for a plurality of the Court states that "[i]t may be that some high threshold showing on behalf of the prisoner will be found a necessary means to control the number of nonmeritorious or repetitive claims of insanity." Id. at 417. In his concurring opinion, Justice Powell observed that, "in order to have been

11

convicted and sentenced, petitioner must have been judged competent to stand trial, or his competency must have been sufficiently clear as not to raise a serious question for the trial court." Id. at 425-26 (Powell, J., concurring). Accordingly, Justice Powell concluded that "[t]he State therefore may properly presume that petitioner remains sane at the time sentence is to be carried out, and may require a substantial threshold showing of insanity merely to trigger the hearing process." Id. at 426 (Powell, J., concurring).

The threshold showing of incompetency to be executed required in Article 46.05 is a "substantial doubt." Patterson does not challenge the adequacy of the procedures established by Article 46.05. Instead, he contends that the state court's decision that he had failed to raise a substantial doubt as to his competency to be executed is objectively unreasonable. He argues that the evidence he presented in support of his motion is "materially indistinguishable" from the facts in Ford, and that, because the Supreme Court determined that Ford had raised a viable claim under the Eighth Amendment, the state court's decision that Patterson failed to raise a substantial doubt as to his competency is contrary to Ford. Patterson also contends that the state court's decision is an unreasonable application of Ford's threshold standard to the particular facts of this case, or alternatively, an unreasonable resolution of the facts in the light of the evidence presented to the state court. Finally, he contends that, when this

12

Court granted a certificate of appealability for this claim, it determined that he had made a "substantial showing" that he is not competent to be executed. Patterson argues that the district court should have held an evidentiary hearing and that it erred by not considering the totality of the evidence.

Contrary to Patterson's assertion, the facts of his case are distinguishable from those in Ford. Ford was convicted of murder and sentenced to death in 1974. Although no question of his competence was raised at the time of his offense or at trial, he became delusional beginning in 1982. A psychiatrist who interviewed Ford in 1983 "concluded that Ford had no understanding of why he was being executed, made no connection between the homicide of which he had been convicted and the death penalty, and indeed sincerely believed that he would not be executed because he owned the prisons and could control the Governor through mind waves." 477 U.S. at 403. The evidence presented by Patterson is not so precisely a fit.

Unlike Ford, whose competence was called into question eight years after his conviction, Patterson's competence has been at issue throughout the proceedings, and has been the subject of evidentiary hearings in state and federal court. At the state habeas evidentiary hearing in December 1997, Patterson acknowledged that he had been convicted of killing Louis Oates and Dorothy Harris and that the State intended to execute him by lethal injection for that offense. Although Patterson states repeatedly

13

in his recent letters that he has been given a permanent stay of execution, amnesty, and a pardon for innocence, those same letters also contain repeated requests to stop his pending execution. The state convicting court's decision that Patterson failed to raise a "substantial doubt" as to his competency to be executed is therefore not contrary to Ford.

Furthermore, the state court did not unreasonably apply Ford's threshold standard to the facts of Patterson's case. The court considered the documentary evidence proffered by Patterson, as well as the records of the prior proceedings involving Patterson, and conducted a hearing on the motion. Although Patterson stresses the evidence of his delusional belief that he has been pardoned and has received a permanent stay of execution, Ford does not require the state convicting court to ignore other evidence indicating that, despite his delusional beliefs, Patterson is aware that he is going to be executed for the capital murders of Louis Oates and Dorothy Harris in determining whether Patterson has made the threshold showing of a "substantial doubt" as to his competency to be executed.

Finally, the fact that this court granted a certificate of appealability for Patterson's claim does not make the state court's decision unreasonable. The standards governing the issuance of a certificate of appealability are governed by federal law, and are not binding on Texas courts applying the "substantial doubt" standard in Article 46.05. As Patterson's counsel conceded at the

14

state court hearing, this court did not purport to construe the meaning of Article 46.05.

Because the state court did not unreasonably determine that Patterson had failed to raise a "substantial doubt" as to his competence to be executed, the district court did not abuse its discretion by failing to conduct another evidentiary hearing on Patterson's claim.

V

For the foregoing reasons, the judgment of the district court is AFFIRMED.  Patterson's motion for a stay of execution is DENIED.