United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 12, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————————

No. 04-10770

———————————————

QUINTON BLANE SMITH,

                                        Petitioner-Appellee,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

                                        Respondent-Appellant.

--------------------
Appeal from the United States District Court
for the Northern District of Texas
--------------------

Before GARWOOD, GARZA and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

     The State challenges the U.S. District Court's grant of
Quinton Blane Smith's petition for a writ of habeas corpus.  For
the following reasons, we affirm the ruling of the district
court.

## I. FACTUAL BACKGROUND

     On January 21, 1996, petitioner Quinton Blane Smith and his
friend Robert Ritterbush were sitting in a parked truck in front
of Smith's house in Garland, Texas.  A mutual friend, Michael
Powell, arrived at the house around 2:30 a.m., accompanied by a

1

fourth individual, Michael Williams. Powell parked his vehicle behind Ritterbush's, exited, and walked over to the driver's side where Ritterbush was seated. He confronted Ritterbush about a statement Ritterbush made to police, implicating Powell in the theft of some firearms. At some point, Williams walked toward the passenger side of the truck where Smith sat. During the verbal altercation, Powell, high on marijuana and alcohol, punched Ritterbush several times. Ritterbush responded by hitting Powell in the face with an unloaded handgun. Powell wrested the gun from Ritterbush and the two began fighting in the street. Smith exited the truck and went inside his house to retrieve his firearm. Williams fled the scene after Smith allegedly threatened to shoot him if Powell shot Ritterbush.

Smith reemerged from his house armed, ordered Ritterbush and Powell to stop fighting, and told Powell to leave the area. The fight promptly stopped. According to Ritterbush and Smith, Powell walked toward Smith quickly and began threatening him. Once Powell was approximately six or seven feet away, Smith raised his gun. Powell continued to approach and Smith fired at him. The shot killed Powell by striking him in the head. The medical examiner determined that the bullet was fired from a distance of at least three feet.

Smith was indicted for murder on February 9, 1996. He pled not guilty. During the trial, Smith argued that he had acted in self-defense by shooting Powell. In order to establish this

2

defense, Smith testified about Powell's long history of violence. He talked about how Powell often got into fights and relayed violent episodes involving Powell he heard others describe. Although Smith identified four witnesses who could corroborate his stories and testify to Powell's violent nature, defense counsel, Melvyn Carson Bruder, failed to call any of them. The fact that no one corroborated Smith's stories about Powell was highlighted by the prosecuting attorney during closing argument. The jury subsequently convicted Smith of murder on November 5, 1996. The court sentenced him to forty-five years in prison.

## II. PROCEDURAL HISTORY

On direct appeal, the Texas Fifth Court of Appeals affirmed Smith's conviction. The Texas Court of Criminal Appeals rejected subsequent appeals. On April 12, 2002, Smith filed an application for a writ of habeas corpus in state court. After an evidentiary hearing, the trial court rejected the application. The Texas Court of Criminal Appeals adopted these findings and dismissed Smith's application without issuing a written opinion. Smith subsequently filed a petition for a writ of habeas corpus in the U.S. District Court for the Northern District of Texas. The federal magistrate judge recommended that Smith's petition be granted due to ineffective assistance of counsel at trial. The district court adopted the magistrate judge's recommendation and conditionally granted the petition. The State appeals this

ruling.

### III. LEGAL STANDARDS

"In reviewing a ruling on the merits of a habeas claim, the district court's findings of fact are reviewed for clear error; its conclusions of law, de novo." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254, supplies the proper standards for reviewing the state court ruling. *See Jones v. Dretke*, 375 F.3d 352, 353-54 (5th Cir. 2004). As to legal issues, the statute provides that the habeas corpus petition should not be granted unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "The state court's application of the law must be 'unreasonable' in addition to being merely 'incorrect.'" *Caldwell v. Johnson*, 226 F.3d 367, 372 (5th Cir. 2000) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). "Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409.

When dealing with factual issues, the habeas petition should not be granted unless the state court's "decision . . . was based

4

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Patterson v. Dretke*, 370 F.3d 480, 484 (5th Cir. 2004).

## IV. DISCUSSION

Smith claims on collateral review that trial counsel's failure to call witnesses who could corroborate his statements about Powell's violent nature constituted ineffective assistance of counsel in violation of the Sixth Amendment. To establish ineffective assistance of counsel, Smith must show (1) defense counsel's performance was deficient and (2) this deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

### A. Deficient Performance

We must find that Bruder, Smith's trial counsel, "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* The Supreme Court instructs courts to look at the "norms of practice as reflected in the American Bar Association Standards" and to consider "all the circumstances" of a case. *Id.* at 688. While "[j]udicial scrutiny of counsel's performance must be highly

5

deferential," Smith can succeed if he shows "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688-89; *see also Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004). However, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Webster*, 392 F.3d 787, 793 (5th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689).

Texas courts have "recognized two theories for admitting evidence of the deceased's character for violence: (1) to show the defendant reasonably believed the force she used was immediately necessary to protect herself from the deceased; and (2) to show the deceased was the first aggressor." *Mozon v. Texas*, 991 S.W.2d 841, 845 (Tex. Crim. App. 1999); a*ccord Torres v. Texas*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). Naturally, if such evidence is presented to show the reasonableness of defendant's apprehension of danger, the defendant must have had some knowledge of the past violent behavior at the time of the homicide. *Lowe v. Texas*, 612 S.W.2d 579, 581 (Tex. Crim. App. 1981). "If offered to show that the deceased was in fact the aggressor, the witness must know, but the defendant need not have knowledge of the violent acts at the time of the homicide." *Id.*

Smith knew several individuals who could testify in court to Powell's violent nature. He informed Bruder that Steven

6

Garretson, to whom Powell once bragged that he had killed someone with a baseball bat, was willing to testify that Powell liked starting fights and became particularly violent when intoxicated. Garretson went to the courthouse during Smith's trial but Bruder never called him to testify. Smith also told his attorney about Randel King who could confirm that Powell became violent when under the influence of narcotics. Although Bruder issued a subpoena for King, he never called him to testify. Finally, Bruder had the names of two of Powell's previous victims, Vernon Cowan and Chris Harlow. Both worked as bouncers and were injured by Powell when they tried to stop him from fighting with a woman at a night club. Both were subpoenaed but Bruder called neither to testify.

It appears that the reason Bruder failed to call these individuals to testify is that he did not know their testimony was admissible. In a sworn affidavit submitted to the state habeas court, Bruder stated the following:

> It was my belief at the time of Mr. Smith's trial that specific acts of misconduct by a victim in a murder case were not admissible unless known to the accused, whether known personally or through hearsay. Accordingly, evidence relating to acts of misconduct by Michael Powell not known to Mr. Smith was not offered by me under the belief that such evidence could not properly be admitted during the trial.

When asked about this matter at the state habeas hearing, though, Bruder could not remember why he did not call the specific witnesses. However, he did reiterate his belief that the issue

7

of self-defense or defense of a third party did not "impact the admissibility of evidence relating to the deceased's acts of misconduct unknown to the accused." It appears that much of what these witness were willing to state at trial was known to Smith; anything that was not known to him personally could have been used to show that Powell was the agressor in this situation.

There is no question that Bruder's decision constitutes grievous legal error that seriously disadvantaged his client. Bruder argued at trial that Smith was innocent because he acted in self-defense; yet, as an attorney, Bruder failed to achieve a rudimentary understanding of the well-settled law of self-defense in Texas. By doing so, he neglected the central issue in his client's case.[1] Failing to introduce evidence because of a misapprehension of the law is a classic example of deficiency of counsel. *See, e.g.*, *Williams v. Taylor*, 529 U.S. 362, 395 (2000) (noting, when finding deficiency of counsel, that petitioner's lawyers "failed to conduct an investigation that would have uncovered extensive records graphically describing Williams' nightmarish childhood, not because of any strategic calculation but because they incorrectly thought that state law barred access to such records"). *Compare Martinez v. Dretke*, 404 F.3d 878, 887-90 (5th Cir. 2005). This misunderstanding could have been

---

[1]Bruder also failed to introduce into evidence arrest reports showing that Powell was charged with assault and public intoxication.

corrected with minimal legal research.

The state district court made the following factual finding and conclusion of law with regard to this issue: "[T]his Court finds that Applicant was represented by an attorney who exercised all of the skill and expertise which one could reasonably expect of an attorney and that Applicant was in no way denied his right to effective assistance of counsel at trial." We have great difficultly comprehending how any court faced with the facts of this case could make such a statement.

There is no question that the state court was objectively unreasonable in finding that trial counsel's performance was not deficient.

### B. Prejudice

The State argues that Bruder's error, even if it were so severe as to implicate *Strickland*, did not sufficiently prejudice Smith's case for the district court to grant habeas relief. Clearly, not having testimony strengthening a belief that Powell was the first agressor or that Smith reasonably feared for his life prejudiced Smith in this case. However, the Supreme Court teaches that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *accord*

9

*United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).
When applying this test, we assume that the trial court and jury
followed the law and we weigh the error in light of "the totality
of the evidence before the judge or jury." *Strickland*, 466 U.S.
at 695. In other words, we must determine the extent to which
Bruder's errors hurt Smith.

Smith's only plausible defense was that he acted in self-
defense. He testified to Powell's violent, aggressive behavior
on the night in question and to his own apprehension of mortal
danger during the conflict. Without corroboration, though, these
statements were easily discounted by the prosecuting attorney:

> And honestly, you've heard a lot of unsubstantiated trash
> about Michael Powell. And I ask you, just take it with
> a grain of salt from where it comes from and the motives
> of the person who told you all that. That's something
> you've got to factor in. And if Michael Powell is so bad
> then where are all these people to tell us what a bad
> person he is. So you have to accept - -
>
> [Objection overruled]
>
> So, I mean, if all of these people are saying bad things
> about Michael Powell and can prove it, then bring the
> witnesses in. Show us. You have to take what Quinton
> Smith said about Michael Powell with a grain of salt.

In his final closing argument, the prosecutor also said:

> And what's the easiest thing to do here? Let's go in the
> courtroom and let's trash this man [Powell]. Let's throw
> out all the innuendo, and he was in a fight, and an
> unprovoked attack on a female. Let's trash the victim.
> Let's get the attention away from our guy and let's trash
> this guy.
>
> . . .

10

I mean, you know, I don't know how you bite someone's arm unless it's wrapped around your neck. You know, maybe Michael was involved in a fight. We never heard from this guy. But if this is our felony assault where we ended up in the hospital then I guess you-all can just use your common sense on that. That's a joke.

We believe there exists a reasonable probability that the jury would not have convicted Smith if it had heard the corroborative testimony Bruder failed to present. This testimony would have lent credibility to Smith's claims of fearing for his life and to his description of Powell's aggressive behavior toward him immediately before the homicide. Without the testimony, his entire line of defense was easily discounted and disparaged by the prosecuting attorney. Failure to present the readily available testimony bearing on both the violence of Powell and Smith's reasonable apprehension of danger seriously undermines our faith in the outcome of the state court proceeding.[2] We find that an objectively reasonable court could not conclude otherwise.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of the writ of habeas corpus.

---

[2]While the State focuses its appeal on the second prong of the *Strickland* standard, it advances no specific argument or rationale in support of the proposition that even if the state court's conclusions were erroneous, they were nonetheless objectively reasonable.