IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 8, 2017

## BRIAN CHRISTOPHER DUNN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Williamson County**
**No. CR-119258     James G. Martin, III, Judge**

_____

### No. M2017-00271-CCA-R3-PC

_____

A Williamson County jury convicted the Petitioner, Brian Christopher Dunn, of initiating a process intended to result in the manufacture of methamphetamine and driving with a suspended, canceled, or revoked license, which the trial court then found to be his sixth offense. The trial court sentenced the Petitioner to an effective sentence of 11 months and 29 days, and this court affirmed the Petitioner's convictions on direct appeal. *State v. Brian Christopher Dunn*, No. M2015-00759-CCA-R3-CD, 2016 WL 1446113, at *1 (Tenn. Crim. App., at Nashville, Apr. 12, 2016), *perm. app. denied* (Tenn. Aug. 17, 2016). The Petitioner filed a petition for post-conviction relief in which he alleged that his trial counsel was ineffective for failing to move to suppress the evidence against him, failing to file a *Ferguson* motion, and failing to file a motion for a new trial. After a hearing, the post-conviction court denied the petition. The Petitioner maintains these issues on appeal, and we affirm the post-conviction court's judgment.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and J. ROSS DYER, JJ., joined.

Jonathan W. Turner, Franklin, Tennessee, for the appellant, Brian Christopher Dunn.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Kim R. Helper, District Attorney General; and Tammy J. Rettig, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from evidence a police officer found in a vehicle that the

Petitioner had been driving before it crashed. With regard to this evidence, a Williamson County grand jury indicted the Petitioner for initiating the process to manufacture methamphetamine, driving with a suspended, cancelled, or revoked license, and driving with a suspended, cancelled, or revoked license–6th offense. A co-defendant, Chelsea Ladd, who had been a passenger in the vehicle at the time of the accident, was also indicted for initiating the process to manufacture methamphetamine.

## A. Trial

After conviction, the Petitioner appealed to this court arguing that the evidence was insufficient to sustain his conviction. We summarized the facts presented as follows:

*State's Proof:*

At trial, Fairview Police Department Officer Russell Bernard testified that he responded to a single-vehicle crash in Williamson County. When he arrived on the scene, Officer Bernard saw a Chevy Tahoe in a wooded area with damage to the front end of the vehicle. Both the [Petitioner] and Ms. Ladd were standing outside the vehicle and did not appear to have serious injuries. The [Petitioner] informed Officer Bernard that he had been driving the Tahoe and claimed that he had fallen asleep at the wheel. The Defendant was not able to produce any identification and told Officer Bernard that his license had been revoked. The [Petitioner] admitted that he had smoked marijuana "just prior to driving," and Officer Bernard stated that the [Petitioner] smelled of marijuana. Officer Bernard also noted that both the [Petitioner] and Ms. Ladd appeared to be nervous— they were pacing in the roadway and could not stand still. The [Petitioner] also appeared "slow-moving, kind of lethargic almost where he just was kind of slow to respond sometimes to [Officer Bernard's] questions." Ms. Ladd also appeared to be "under the influence of something."

Officer Bernard asked both the [Petitioner] and Ms. Ladd if they had any illegal drugs in the Tahoe, but they said they did not. Based on the odor of marijuana and the [Petitioner's] admission that he had smoked marijuana prior to driving, Officer Bernard decided to search the Tahoe. In the "cargo area" of the Tahoe, Officer Bernard found a pile of clothes and a clear, plastic bag "with a funnel sticking out of it." Officer Bernard stated that he believed the pile contained a mixture of men's and women's clothes. Officer Bernard picked up the bag and saw that it contained a yellow funnel, two crumpled coffee filters inside the funnel, plastic tubing attached to a plastic bottle cap, lithium batteries, a pack of unused coffee

2

filters, and a cold compression pack that had been cut open. Officer Bernard stated that the plastic bag contained items used to manufacture methamphetamine. Officer Bernard noted that the plastic tubing was discolored. He also stated that the open cold compression pack should have contained ammonium nitrate pellets and a small ampule of water, which when broken reacts with the ammonium nitrate and causes the bag to become cold. However, there was no water ampule inside the cold compression pack, and only a small amount of ammonium nitrate remained at the bottom of the bag. It did not appear that the water ampule had been broken to cause a reaction with ammonium nitrate and "activate" the cold compression pack. The only time Officer Bernard had seen a cold compression pack open in such a manner was in association with methamphetamine labs. He also stated that ammonium nitrate is one of the ingredients used to make methamphetamine. He did not find any methamphetamine in the Tahoe.

Officer Bernard also stated that the plastic bag contained a sewing kit, head bands, and a hair brush with some hair that appeared to match the length and color of Ms. Ladd's hair. However, Officer Bernard said that, because the bag was in the back of the Tahoe, he could not "directly connect" the bag to either Ms. Ladd or the [Petitioner].

After securing the bag in his vehicle, Officer Bernard spoke with the [Petitioner] and Ms. Ladd separately and asked each of them if they had smoked methamphetamine. Both of them admitted that they had used methamphetamine "within the last day or two." Without telling the [Petitioner] what he had found in the Tahoe, Officer Bernard asked the [Petitioner] if there was anything else in the car. The [Petitioner] responded, "Whatever's been found in that car is not mine, I don't know what it is." Ms. Ladd also denied "any knowledge or possession of the items that were in her car." Ms. Ladd informed Officer Bernard that the [Petitioner] had been driving the Tahoe for the last four days and that she did not know what he was doing during that time. However, the [Petitioner] told the officer that Ms. Ladd "had just picked him up that day in the vehicle."

Eventually, Ms. Ladd was taken to the hospital to receive treatment for an ankle injury. As she was leaving the scene, the [Petitioner] "started yelling at her so she could hear him and said that—told her not to [']take a charge,['] that the items were his." Officer Bernard asked the [Petitioner] which items belonged to him, and the [Petitioner] said that "he didn't know,

3

but they were his."

Officer Bernard transported the evidence to the police department to be photographed and stored. All the evidence, except the cold compression pack, was stored in the evidence locker.

On cross-examination, Officer Bernard stated that the Tahoe was registered to Ms. Ladd. Officer Bernard also stated that he did not know when the items were last used to make methamphetamine and that he did not know how long those items were in the Tahoe. Officer Bernard reiterated that, because the plastic bag was found in the back of the Tahoe, Officer Bernard could not definitively say that either the Defendant or Ms. Ladd possessed the bag.

Sharon Taylor testified that she was the evidence technician at the Fairview Police Department. Ms. Taylor noted that she refused to accept the opened cold compression pack because it was considered an explosive and that the City of Fairview did not have a locker to store explosives. Ms. Taylor also noted that she sent the evidence to the Tennessee Bureau of Investigation ("TBI") for analysis.

Deputy Brad Fann, of the Williamson County Sheriff's Office, explained how methamphetamine is manufactured. He testified that a person making methamphetamine can buy cold compression packs from a drug store, cut open the pack, discard the water ampule, and use the ammonium nitrate in the methamphetamine cooking process. Deputy Fann stated that approximately one cup of ammonium nitrate is needed to make methamphetamine and that a cold compression pack contains approximately one cup of ammonium nitrate. Deputy Fann stated that he was not aware of any lawful use for a cold compression pack that had been cut open. Based on his training, Deputy Fann opined that the items found in the back of the Tahoe were used to manufacture methamphetamine.

Laura Cole, a chemist with the TBI, testified that the funnel, tubing, and coffee filters found in the Tahoe were submitted to her for testing to determine whether they contained traces of methamphetamine. Ms. Cole noted that she did not find a sufficient amount of residue to test.

*[Petitioner's] Proof:*

Ms. Ladd testified that she was also charged with initiating the

4

process to manufacture methamphetamine. Ms. Ladd recalled that "some nitrate . . . some batteries, a bottle, [and] some tubing" were found in the Tahoe. When asked if she knew how the items came to be in the car, Ms. Ladd stated, "I just know that they was in my car earlier that day from where me and some of my friends had messed around." She said she did not know who opened the cold compression pack. However, she said she knew it was not opened by the [Petitioner] "[b]ecause [she] wasn't with [the Petitioner] earlier that day like [she] was with some other friends. The only reason [the Petitioner] was there in the first place was because [she] had asked him to drive [her]." Ms. Ladd said that the items in the plastic bag belonged to her.

On cross-examination, Ms. Ladd denied a romantic relationship with the [Petitioner] but said that they were close friends. Ms. Ladd admitted that she paid the [Petitioner's] bail. She also stated, "I feel like it's my fault [the Petitioner] was ever there. I asked him to drive me and if he wouldn't have been driving—if I wouldn't never asked him to drive me he wouldn't have been there and that's a fact." Ms. Ladd said she did not recall denying on the night of the wreck that the items belonged to her, and she said she "was pretty sure [she] didn't say anything." Ms. Ladd thought the [Petitioner] told her not to say a word because he was looking out for her and not because he knew about any of the items in the car. She denied that the [Petitioner] claimed the items as his.

Ms. Ladd admitted that she had been using methamphetamine in the days before the wreck, but she said the [Petitioner] had not used methamphetamine. When asked if she would be surprised if the [Petitioner] told Officer Bernard that he had used methamphetamine, Ms. Ladd said, "Yeah, I'd be surprised. I don't believe that he did unless you have some type of proof." Ms. Ladd denied telling Officer Bernard that the [Petitioner] had possession of her Tahoe for the four days prior to the wreck. She insisted that the items did not belong to the [Petitioner]. Ms. Ladd stated that she pleaded guilty to attempting to initiate the manufacture of methamphetamine. She thought "that pretty much says that [she] was the person responsible." Ms. Ladd also reported that she had been sentenced to drug court after her plea but had since been "kicked out" of drug court and was serving her sentence in confinement.

*Dunn*, 2016 WL 1446113, at *1-3. This Court affirmed the Petitioner's convictions. *Id.* at *1.

## B. Post-Conviction Facts

While the Petitioner's appeal was pending in this court, he filed a petition for post-conviction relief, alleging that he had received the ineffective assistance of counsel because his trial counsel failed to move to suppress the evidence against him, failed to file a *Ferguson* motion, and failed to file a motion for a new trial. The post-conviction court held a hearing, and the parties presented the following evidence: Russell Bernard, a state trooper with the Tennessee Highway Patrol ("THP"), testified that he had been employed with the THP for about four months before he encountered the Petitioner in May 2013. He said that he responded to an accident at around 1:00 a.m. He saw that the crash scene was in the ramp area of Highway 100 toward Highway 96. Officer Bernard saw a truck on the side of the road, and he later learned it belonged to Denver Johnson. Mr. Johnson told him that he saw a vehicle in the woods.

Officer Bernard testified and reiterated the testimony he offered at trial, adding that, when the Petitioner informed the officer that he did not have a driver's license, he stated that he was on parole for manufacturing methamphetamine. Officer Bernard further explained his decision, based on the Petitioner's admission that he was driving after smoking marijuana, to search the vehicle. As it was dark, and the car was far from the roadway, he used his flashlight to examine the vehicle. He noted that the "whole front end of the vehicle was smashed in and the motor was put back into the passenger compartment." He opened the back doors and saw a large pile of clothing loosely thrown about and a plastic bag that contained a yellow funnel. When he reached for the funnel, the officer saw that there was a bottle cap and a piece of surgical tubing inserted in the top of it. Inside the funnel were two coffee filters. Also in the zip-lock bag were some female items, like a headband. The officer also found in the zip-lock baggie a cold compress pack that had been cut open.

Officer Bernard said that, in his experience, some of the items that he found were used in the process of manufacturing methamphetamine. He explained that the cold compress contained ammonia nitrate, which was used in the process of making methamphetamine. The officer said he placed the zip-lock baggie on the floorboard of his vehicle, locked the doors, and continued with his investigation.

The officer testified that he later learned that the memory card of his in-vehicle camera was full, so the stop was not recorded. The officer said that he testified at the Petitioner's trial and that the evidence about which he had testified was introduced at trial.

Officer Bernard testified that the Petitioner refused medical treatment at the scene and that, thereafter, the officer detained him. He read him his *Miranda* warnings,

6

handcuffed him, and placed him in the back of the patrol car. The Petitioner told Officer Bernard that whatever the officer had found did not belong to the Petitioner.

During cross-examination, Officer Bernard testified that, before he searched the car, the Petitioner told him that he was on parole for methamphetamine. He also had prior knowledge about the Petitioner from working in the jail at Dickson County. The officer described the Petitioner as lethargic and slow-moving but said that he did not conduct any field sobriety tests because the officer had no indication that the Petitioner was impaired. He said he smelled marijuana on the Petitioner's person, but he could not detect impairment when speaking with the Petitioner. The officer testified that Ms. Ladd seemed impaired.

The Petitioner testified that the trial court appointed Counsel to this case before his arraignment. The Petitioner said he was driving the Chevy Tahoe when it crashed but had only been in the vehicle a short time, maybe forty-five minutes. He said that, after the crash, he walked to the road, where a pickup truck had stopped. Shortly thereafter, Officer Bernard arrived. The Defendant said he had some difficulty recalling that evening, which he attributed to the fact that he had broken the windshield with his head during the accident. He said he did not recall anything that he told the officers. The Defendant did recall that, after Officer Bernard placed him under arrest, he told the officer that nothing in the car belonged to him. The Petitioner agreed that he smoked marijuana before getting into the vehicle. He said he entered the vehicle with nothing, except his cell phone.

The Petitioner testified that he and Counsel did not discuss his defenses until moments before he came to court, when the two would talk for a couple of minutes. He said it was always "rushed." He said that they never discussed a suppression hearing, and he did not think she ever filed a motion to suppress. He said that he also did not think that she filed a *Ferguson* motion regarding the video recording from the officer's in-car video camera. The Petitioner said Counsel never discussed with him any issue about the video.

The Petitioner recounted that the plea offer from the State was six years to run concurrently to each other and consecutively to another sentence he was required to serve. He agreed that consecutive sentencing was mandatory because he was on parole at the time of this offense. The Petitioner said he decided not to take the plea offer because he was not guilty of the charged offense.

The Petitioner said that Counsel never filed a motion for new trial. The Petitioner said he would have wanted Counsel to file a motion to suppress, a *Ferguson* motion, and a motion for new trial on his behalf.

7

During cross-examination, the Petitioner testified that he did not recall whether he refused medical treatment on the night of the accident. He said that the night of the accident was the first time he had ever been in the vehicle and that he had nothing in the vehicle. The Petitioner agreed that, while incarcerated, he wrote Counsel "several" letters, but she never responded, other than one letter that contained his discovery and one letter where he was to sign indicating that he did not want to appeal his case.

The Petitioner agreed that he did not sign and return the letter about his appeal. He also agreed that, at one point, he told Counsel that he did not want to appeal his case but just wanted to serve his time. He said, however, that he wrote her a follow-up letter indicating that he had changed him mind and wanted to appeal. Going over the timeline, the Petitioner said that he was convicted in October 2014 and sentenced in February 2015. He said that he did not write the letter to Counsel informing her that he did not want to appeal until May or June of 2015. He said that sometime between August and November 2015, he wrote her a letter saying that he had changed his mind.

The Petitioner agreed that his trial strategy involved calling Ms. Ladd to testify. She had already pleaded guilty to the offense. At trial, Ms. Ladd testified that the items in the vehicle belonged to her, and the jury still convicted him.

During redirect examination, the Petitioner testified that Officer Bernard testified at trial that the items found in the vehicle could be used to manufacture methamphetamine.

The parties then stipulated that Counsel had not filed a motion to suppress, a *Ferguson* motion, or a motion for new trial.

Counsel testified that she did not file a motion to suppress the evidence found in the Chevrolet Tahoe for multiple reasons. First, she reviewed the discovery, and the Tahoe did not belong to the Petitioner, so he did not have standing to file such a motion. Further, the Petitioner admitted to smoking marijuana before driving, giving the officers probable cause to search the vehicle. Finally, the Petitioner told the officer that whatever was in the vehicle did not belong to him. For these reasons, she did not think that she had a good-faith basis to file a motion to suppress, and she explained this to the Petitioner "many times."

Counsel said she spoke with the Petitioner for "a significant amount of time" during court dates. The Petitioner wrote to her on multiple occasions, and she said she responded to most of his letters. Counsel said that she was aware that there was no video evidence in this case. She said that she sent "something" to two people employed with

8

the police department but received no response. One of the police department employees told her that the video recorder had gotten full and there was no video. Counsel again felt there was no good faith basis for a *Ferguson* motion because there was no evidence that the State failed to preserve evidence subject to discovery because there was no video recording from the scene. She had no reason to believe that evidence had been destroyed.

Counsel explained why she did not file a motion for new trial. She said that she filed a notice of appeal and, while she was awaiting the transcripts and before the deadline for the motion for new trial had arrived, the Petitioner sent her a letter saying that he did not want to appeal but that he wanted to serve his time. Counsel said she filed a motion for an extension of time with this court. Upon receiving the Petitioner's letter, she sent him a response detailing his rights and asking him to sign a waiver of his right to appeal. Counsel said that the only issue she intended to raise on appeal was the sufficiency of the evidence, which did not require a motion for new trial.

Counsel discussed some of the things that she had done during her representation of the Petitioner, including filing for discovery, communicating to him the State's offer, and discussing that offer with him. She said that the Petitioner refused the State's offer and that he wanted to go to trial. She said she called Ms. Ladd as a witness. Counsel said that she filed a motion for an investigator, which the trial court denied. She, however, got an investigator to do her a favor and interview Ms. Ladd. The investigator gave Counsel a copy of the interview, which comported with Ms. Ladd's prior statements. Counsel said that she personally ensured that the Petitioner had clothes to wear for the trial based upon her belief that he should be treated the same as the clients who had retained her services.

Counsel said that she and the Petitioner agreed together that he would not testify at trial because of his past criminal history. Counsel said that she worked hard preparing for this trial, including being up all night the night before to ensure that she had looked at every piece of paper in the file. She consulted with her mentor, David Raybin, on multiple questions to ensure she was "on the right track."

During cross-examination, Counsel testified that she questioned the officer extensively about the video equipment not recording. She said that, even in hindsight, she would not have filed a *Ferguson* motion because there was no reason to believe that a video existed. She also did not file a motion to suppress because she knew that an exception to the warrantless search existed, in that the Petitioner agreed that he had smoked marijuana before driving and the officer smelled the odor of marijuana on him. She agreed that the officer said that there was no odor of marijuana around the vehicle. Counsel recalled that both the Petitioner and Ms. Ladd told the officers that they had smoked methamphetamine within the last few days and the officer found a funnel and

other supplies in the back of the Tahoe.

Counsel recounted that, further, the Petitioner yelled to the officer after the search that everything in the vehicle belonged to him. Further, the Petitioner admitted to the officer that he was driving the vehicle despite the fact that his driver's license was suspended. Finally, the Petitioner was on parole, a status which, in essence, waived his right to assert searches are unreasonable.

Based upon this evidence, the post-conviction court dismissed the petition for post-conviction relief.

## II. Analysis

On appeal, the Petitioner contends that the trial court erred when it denied his petition because his trial counsel was ineffective for failing to move to suppress the evidence against him, failing to file a *Ferguson* motion, and failing to file a motion for a new trial.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth

10

Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462.

Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable

11

standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

## A. Motion to Suppress

The Petitioner contends that Counsel was ineffective for failing to file a motion to suppress the evidence found in the vehicle as a result of the search. He asserts that he had standing to contest the search, in part because he was in control of and had driven the vehicle for forty-five minutes before the accident. In further support of his contention, he notes that the State posits that he possessed the methamphetamine evidence in the truck, showing he had standing to contest the search. The State counters that the post-conviction court correctly found that the Petitioner was not prejudiced by Counsel's failure to file the motion to suppress because the Petitioner had disclaimed any expectation of privacy and because the officer had probable cause to search the vehicle.

The post-conviction court in its written order, found as follows:

### i. **Deficient Performance for Failure to File**

In addition to the duty to confer, effective representation includes a duty for attorneys to "be prepared, where appropriate" to make pre-trial motions. . . . The attorney's decision whether or not filing a motion is appropriate may constitute deficient performance when the attorney bases his or her decision on a misunderstanding of the law. *Johnson v. United States*, 604 F.3d 1016, 1019 (7th Cir. 2010). *Cf. Lafler v. Cooper*, 132 S. Ct. 1376, 1391 (2012) (finding ineffective assistance of counsel when counsel misinformed client regarding the law); *Williams v. Taylor*, 529 U.S. 362, 395 (2000) (upholding trial court's finding of ineffective assistance of counsel when counsel failed to request records due to a misunderstanding of the law); *Bynum v. Lemmon*, 560 F.3d 678, 684-85 (7th Cir. 2009) (holding that trial counsel's assistance was ineffective when decision to keep client off the witness stand was based on a misunderstanding of procedural law); *Dando v. Yukins*, 461 F.3d 791, 799 (6th Cir. 2006) ("attorney's decision was not an exercise in professional judgment because it reflected a misunderstanding of the law regarding the availability of a mental health expert"); *Smith v. Dretke*, 417 F.3d 438, 442 (5th Cir. 2005) ("Failing to introduce evidence because of a misapprehension of the law is

12

a classic example of deficiency of counsel").

The facts establish that [Counsel] was prepared to file a pre-trial motion to suppress evidence gathered from the Petitioner's vehicle. She did not do so because she decided that filing such motion would be frivolous. [Counsel] was unequivocal in her position that unless a person is the owner of a vehicle to be searched, such person has no standing to object to the search. [Counsel] stated that she based her decision on her research. Unfortunately, [Counsel's] understanding of the legal principles governing standing are inaccurate. Non-owners may have standing to object to a search if the facts establish that they had a legitimate expectation of privacy in the vehicle. *State v. Valdez*, No. M1999-00791-CCA-R3-CD, 2001 WL 327994, at *2 (Tenn. Crim. App. Apr. 4, 2001); *State v. Oody*, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991); *State v. Turnbill*, 640 S.W.2d 40, 45 (Tem. Crim. App. 1982). *See also Johnson*, 604 F.3d at 1020 ("It is well-established that a driver of a borrowed vehicle may establish a reasonable expectation of privacy in a vehicle even though that driver is not the owner of the vehicle") (citing *United States v. Thomas*, 447 F.3d 1191, 1197-98 (9th Cir. 2006); *United States v. Soto*, 988 F.2d 1548, 1553 (10th Cir. 1993); *United States v. Garcia*, 897 F.2d 1413, 1418-19 (7th Cir.1990); *United States v. Miller*, 821 F.2d 546, 548-49 (11th Cir. 1987)).

The Court finds that [Counsel's] decision to not file a motion to suppress the evidence resulting from the warrantless search was deficient because it was based on a misapprehension of the law and not reasonable trial strategy. Whether her deficiency arose to the level of ineffective assistance of counsel, however, depends on whether there was a reasonable probability that the motion would have been successful.

## ii. **Reasonable Probability of Prejudice**

The second issue is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In other words, whether there is a reasonable probability that [Counsel's] motion to suppress would have been successful. It is clear from the facts in the record that it would not have been.

At a hearing on the issue of suppression of evidence, there are several prerequisites that a defendant must satisfy before the burden shifts to the prosecution to justify a warrantless search or seizure. At the

evidentiary hearing,

> the accused has the initial burden of proving by a preponderance of the evidence (a) he has a legitimate expectation of privacy in the place or property from which the items sought to be suppressed were seized, (b) the identity of the items he seeks to suppress as evidence, and (c) the items were seized without a warrant.

*State v. Burton*, 751 S.W.2d 440, 445 (Tenn. Crim. App. 1988) (citations omitted). The failure to establish these preliminary facts is dispositive on the issue and results in a denial of the motion. *See, e.g., State v. Matthews*, 805 S.W.2d 776, 780 (Tenn. Crim. App. 1990) ("If the appellant did not have a reasonable expectation of privacy, the appellant did not have standing to challenge the actions of the officers; and the question as to whether the search and seizure was reasonable becomes moot.")

. . . .

The State contends that [the Petitioner] had no standing to contest the search. The State bases its position on an analysis of the facts concluding that [the Petitioner] had no reasonable expectation of privacy in the place to be searched, the vehicle belonging to Ms. Ladd. The State of Tennessee correctly notes that a criminal defendant who does not claim any sort of ownership or possessory interest in a vehicle must establish a reasonable expectation of privacy in the vehicle in order to have standing to challenge the search of the vehicle and the seizure of the items found inside. *Tennessee v. Tabb*, M2014-00617-CCA-R3-CD, 2015 WL 7068225, *7 (Tenn. Crim. App. Nov. 13, 2015).

. . . .

In determining whether the defendant has a reasonable expectation of privacy, the Court must first look at whether the defendant, by his conduct, has exhibited an actual (subjective) expectation of privacy and whether the individual subjective expectation of privacy is one that society is prepared to recognize as reasonable. *Tennessee v. Kelly*, M2011-02260-CCA-R3-CD, 2013 WL 5827646, *6 (Oct. 29, 2013) (citing State v. Ross, 49 S.W.3d. 833, 840 (Tenn. 2001)). In cases that have dealt with a legitimate expectation of privacy existed for the non-owner of a vehicle, Tennessee courts have looked to seven factors:

(1) ownership of the property, (2) whether the defendant has a possessory interest in the thing seized, (3) whether the defendant has a possessory interest in the place searched, (4) whether the defendant has a right to exclude others from that place, (5) whether he has exhibited a subjective expectation that the place would remain free from intrusion by the state, (6) whether the defendant took normal precautions to maintain his privacy, and (7) whether he was legitimately on the premises.

*Oody*, 823 S.W.2d at 560 (citing United States v. Haydel, 649 F.2d 1152 (5th Cir.1981)).

In *Johnson v. United States*, a Seventh Circuit review of a post-conviction matter that is particularly analogous to this one, the petitioner alleged that his attorney was ineffective because of a misapprehension of law in failing to seek to suppress evidence recovered from a vehicle that he was driving which he had borrowed from a relative. 604 F.3d at 1018-19. Crack cocaine was recovered from the vehicle as a result of a warrantless search. *Id.* at 1019. The court found that there was a genuine issue as to whether Mr. Johnson's counsel's performance was deficient by failing to file a motion to suppress holding that "a driver of a borrowed vehicle may establish a reasonable expectation of privacy and the vehicle even though that driver is not the owner of the vehicle." *Id.* at 1020 (citations omitted). The Circuit Court, however, remanded the case to district court for an evidentiary hearing to determine whether there was a reasonable probability that the motion would have been successful.

Unlike the facts of *Johnson v. United States*, this Court has a sufficient evidentiary basis for concluding that [Counsel's] failure to file a motion to suppress did not result in a reasonable probability that the outcome of the proceeding would have been different. The Court finds that [the Petitioner] claimed no ownership or possessory interest in the property seized. While [the Petitioner] was legitimately driving the vehicle owned by Ms. Ladd, he claimed no possessory interest in her vehicle. He did not object to the search. Further, [the Petitioner] had no right to exclude others from the vehicle. [The Petitioner] made no statement and exhibited no conduct that he expected the vehicle would be free from search by law enforcement. Further, [the Petitioner] took no normal precaution to maintain any privacy in the place searched.

15

Based on the foregoing, the Court finds that had there been an evidentiary hearing, the court would have denied [the Petitioner's] motion to suppress finding that he had no standing to object to the search, not because he wasn't the owner of the vehicle, but because he had no reasonable expectation of privacy in the place searched. Having found that [Petitioner] had no standing to contest the search, the Court need not address whether the warrantless search and seizure was illegal. The Court finds that there is not a reasonable probability that, but for [Counsels'] failure to file a motion to suppress, the results of [the Petitioner's] trial would have been different. Therefore [The Petitioner's] claim of ineffective assistance on this ground is without merit.

Having thoroughly reviewed this issue, this Court adopts the sound and extensively researched reasoning of the post-conviction court. We agree that the Petitioner cannot prove the necessary second prong of his post-conviction claim, namely that he was prejudiced by Counsel's deficient performance. The Petitioner clearly claimed to the officer that nothing in the car was his. After the contraband was found he again claimed it did not belong to him. When a defendant disclaims any interest in the property to be searched or seized, he has no legitimate expectation of privacy in it regardless of the other circumstances. *State v. Ross*, 49 S.W.3d 833, 842-43 (Tenn. 2001) (stating, "Accordingly, we reaffirm that a defendant's disclaimer of an interest in the object of a government investigation will result in a loss of the defendant's subjective expectation of privacy in that object, irrespective of other considerations such as actual ownership or possession.").

We note that, after the search, the Petitioner may have yelled to Ms. Ladd not to take the charge and then yelled to the officer that everything in the vehicle was his. This, however, occurred after he disclaimed any interest in anything in the vehicle prior to the search. Further, it appears that he made this claim in order to attempt to protect Ms. Ladd. At trial and during post-conviction he maintains that nothing in the vehicle belonged to him.

Additionally, the Petitioner stated that he was on parole at the time of the accident and that he had smoked an illegal substance shortly before driving. The Petitioner told the officer that he was driving at the time of the accident, and the officer noted the smell of marijuana on the Petitioner. *See State v. Tywan Garcia Armstrong*, No. M2008-02837-CCA-R3-CD, 2010 WL 987207, at *6 (Tenn. Crim. App., at Nashville, Mar. 18, 2010) (holding that the smell of marijuana gave the officer probable cause to search the vehicle). The Petitioner did not have an expectation of privacy in the vehicle, he did not contest the search, and officer had probable cause to search the vehicle. Accordingly, we conclude that the Petitioner is not entitled to relief on this issue.

16

## B. Ferguson Motion

The Petitioner next contends that Counsel was ineffective for failing to file a *Ferguson* motion. He argues that, since the failure to record the video is the State's fault, it is a violation of the State's duty to preserve evidence. The State counters that the Petitioner did not prove that a video ever existed; a prerequisite to him being entitled to relief.

The post-conviction court found:

> [The Petitioner] also claims that he was denied effective assistance of counsel because [Counsel] failed to file a *Ferguson* motion. The State has a duty to preserve all evidence subject to discovery and inspection under Tenn. R. Crim. P. 16 or other applicable law. *State v. Ferguson*, 2 S.W.3d 912, 917 (Tenn. 1999); *see also Brady v. Maryland*, 373 U.S 83 (1963). However, there is no general requirement for law enforcement to electronically record their activity, *State v. Godsey*, 60 S.W.3d 759, 771 (Tenn. 2001), or to conduct any particular type of investigation or utilize any particular investigative technique. *State v. Brock*, 327 S.W.3d 645, 698 (Tenn. Crim. App. 2009) (quoting *State v. Best*, No. E2007-00296-CCA-R3-CD, 2008 WL 4367529, at *13 (Tenn. Crim. App. Sept. 25, 2008)).

> In the case before the Court, there is no evidence that the State failed to fulfill its duty. The evidence is undisputed that Trooper Bernard's Fairview Police Department vehicle was equipped with a video recording device and that he had a body microphone capable of creating an audio recording. However, either the video recorder was full or it filled up shortly after Trooper Bernard arrived at the scene of the accident at 1:00 a.m. on May 28, 2013. There is no evidence, whatsoever, nor is there the hint of any evidence, that law enforcement officers created a video and/or audio recording of the interaction with [the Petitioner]. There is no evidence, nor is there the hint of any evidence, of the destruction of any such evidence by law enforcement officers.

> Therefore, the Court finds that [Counsel's] performance was not deficient on this ground.

In the case of *State v. Ferguson*, 2 S.W.3d 912, 916 (Tenn. 1999), our supreme court adopted a test for courts to use in determining whether the loss or destruction of

17

evidence in the State's possession deprived the defendant of a fair trial. The initial inquiry is whether the State had a duty to preserve the evidence:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Id.* at 917 (quoting *California v. Trombetta*, 467 U.S. 479, 488-89 (1984)). If the proof demonstrates that the State failed in its duty to preserve evidence, "the analysis moves to a consideration of several factors which guide the decision regarding the consequence of the breach." *Id.* Those factors include "(1) the degree of negligence involved; (2) the significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence used at trial to support the conviction." *Id.* If a trial without the missing evidence would be fundamentally unfair, the trial court may dismiss the charges, give a jury instruction, or "craft such orders as may be appropriate to protect the defendant's fair trial rights." *Id.*

In the case presently before us, the Petitioner has not provided any evidence that a video recording of the interaction with the Defendant existed. The only testimony was that of the officer, who said that the storage of his video recording equipment was full, so there was no recording made of the interaction with the Defendant. Counsel said that she spoke with several members of the police department and learned that there was no recording of the interaction. As such, we conclude that there was no evidence to which *Ferguson* would apply, and that Counsel was not ineffective for failing to file a *Ferguson* motion.

### C. Motion for New Trial

The Petitioner next contends that Counsel was ineffective for failing to file a motion for new trial. He asserts that the motion for new trial should have raised the constitutionality of the search of his vehicle and that his due process rights were violated by the State's failure to preserve evidence. The State counters that the Petitioner has not met his burden of proof because he told Counsel he did not want to pursue an appeal and because, had Counsel filed an appeal, there is no proof that she would have appealed an issue other than sufficiency of the evidence.

The post-conviction court found:

18

In order to establish ineffective assistance of counsel for failure to file a Motion for New Trial, "a petitioner in a post-conviction proceeding must establish that he or she intended to file a motion for a new trial and that but for the deficient representation of counsel, a motion for a new trial would have been filed raising issues in addition to sufficiency of the evidence." *Wallace v. State*, 121 S.W.3d 652, 657-659 (Tenn. 2003). The evidence in this case is undisputed that [the Petitioner] advised [Counsel] that he did not want to pursue an appeal. [The Petitioner] later had a change of heart and so advised [Counsel]. By then, however, the time for filing a motion for new trial had passed. [Counsel] did file a notice of appeal and did pursue, on appeal, the issue of whether the evidence at the trial of the case was sufficient to support a conviction. [The Petitioner's] conviction was sustained by the Court of Criminal Appeals. *Dunn*, 2016 WL 1446113. The Court finds that [the Petitioner's] right to effective counsel was not violated on this ground.

We agree with the post-conviction court that the evidence presented at the hearing was undisputed that the Petitioner told Counsel that he did not wish to pursue an appeal. The evidence is also undisputed that, after the deadline for the motion for new trial, the Petitioner changed his mind and informed Counsel that he wanted to pursue an appeal. Counsel pursued an appeal on the grounds of the sufficiency of the evidence, and this Court affirmed the Petitioner's convictions. We first conclude that Counsel was not deficient in this regard. We further conclude that he cannot prove prejudice because any appeal on the other alleged grounds would not have been successful, as detailed above. Accordingly, he is not entitled to relief on this issue.

## III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

19